## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

HAZEL G. DuMARS, etc.,                    :

     Plaintiff,                          :

vs.                                       :          CA 05-0090-C

DELTA HEALTH, INC., d/b/a                 :
CITRONELLE
CONVALESCENT CENTER,                      :
et al.,
                                          :
     Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on the motion to compel arbitration filed by defendant Delta Health Group, Inc., d/b/a/ Citronelle Convalescent Center (hereinafter, "Delta Health") (Doc. 5; *see also* Doc. 6), plaintiff's supplemental response to the defendant's motion (Doc. 21),[1] defendant's reply to plaintiff's response (Doc. 23), and the parties' oral arguments on August 23, 2005. The parties in this case have either explicitly or implicitly consented to the exercise

---

[1]    Plaintiff's initial response to the motion to compel arbitration, filed on April 4, 2005 (Doc. 15), is not considered by the Court in reaching a decision about whether arbitration should be compelled inasmuch as this case has reached a stage which overcomes plaintiff's initial response that the motion to compel was unenforceable because neither the deceased nor her next friend, Ronald Everts, existed or had the legal authority to represent the decedent (*id*., at 2-3). Ronald Everts is now legally the Personal Representative of the Estate of Hazel G. DuMars. (Doc. 21, at 1)

of jurisdiction by the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings, including disposition of this motion.[2]   Upon consideration of the contents of the pleadings and the arguments of counsel, the Court **GRANTS** the defendant's motion to compel arbitration.

## FINDINGS OF FACT

1.      On January 6, 2005, Hazel DuMars, individually by and through

---

[2]      The parties originally consented to jurisdiction by Magistrate Judge Bert W. Milling, Jr., for all proceedings in this Court (Doc. 13 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including the trial, and order the entry of a final judgment, and conduct all post-judgment proceedings.")), and the order of reference was signed by United States District Judge William H. Steele on March 9, 2005 (*id.* ("IT IS HEREBY ORDERED that this case be referred to Bert W. Milling, Jr.[,] United States Magistrate Judge, to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. 636(c) and Fed.R.Civ.P. 73.")). On June 2, 2005, this case was transferred to the undersigned's docket from the docket of Magistrate Judge Milling. (*See* Docket Sheet) The undersigned informed the parties during oral arguments on August 23, 2005, that they could consent to his jurisdiction in this matter or request that the case be reassigned. Plaintiff's counsel immediately consented on the record to the undersigned exercising jurisdiction in this case for all matters, including disposition of the instant motion. Defendant's attorney, however, advised the Court that he needed a couple of days to consult with his client about consenting to the exercise of jurisdiction by the undersigned for all proceedings in this case. The Magistrate Judge thereupon informed counsel for the defendant that he would be given forty-eight hours to request reassignment and that following the passage of two days, consent would be inferred. Inasmuch as the defendant's attorney has never contacted the Clerk's Office to request reassignment, the defendant is found to have implicitly consented to the exercise of jurisdiction by the undersigned for all matters, including disposition of the instant motion to compel arbitration. *See Roell v. Withrow*, 538 U.S. 580, 590, 123 S.Ct. 1696, 1703, 155 L.Ed.2d 775 (2003) ("We think the better rule is to accept implied consent where, as here, the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge. Inferring consent in these circumstances thus checks the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority. Judicial efficiency is served; the Article III right is substantially honored.").

herself and her next friend, Ronald M. Everts, filed a two-count complaint against Citronelle Convalescent Center for injuries she suffered as the result of the negligent care she received at the nursing home. (*See* Doc. 1, Exhibit A, COMPLAINT)

2.     On February 14, 2005, the defendant, Delta Health, Inc., d/b/a Citronelle Convalescent Center (hereinafter, "Delta Health"), removed the action to this Court. (Doc. 1) Six days following removal, the defendant filed its motion to compel arbitration. (Doc. 5) In support of the motion to compel arbitration, Delta Health attached the affidavit of Laura Saxon, the Facility Administrator of Citronelle Convalescent Center. (Doc. 6, Affidavit of Laura Saxon)

3.     Delta Health Group, Inc., was incorporated in the State of Delaware, and its general headquarters are located in Pensacola, Florida. Delta Health owns and operates 44 facilities in Mississippi, Alabama and Florida.

4.     There is extensive interaction between the Citronelle facility and the general headquarters of the company in Pensacola. Various aspects of the daily operation of the Citronelle facility and other facilities are in fact carried out in Pensacola by the general headquarters. For example, all paychecks and benefits for employees at the Citronelle facility are processed through the Pensacola office. Also, all invoices for various materials used in the operation of the nursing home are paid through the Pensacola office.

5.     Furthermore, the Pensacola office generates and

distributes all training materials used by the Citronelle facility for the training of its employees. These training sessions are handled by an employee in the Pensacola office, and are performed generally at one of Delta Health's Mississippi nursing homes. All operations manuals and policies and procedures are generated by the Pensacola office as well, and distributed to us at the Citronelle facility.

6.    All materials necessary for the operation of the nursing home are purchased by the Pensacola office from out of state vendors. All general inventory and materials are purchased from a company named Dolphin Systems, located in Pensacola, Florida, and then shipped to our facility in Citronelle. All medications necessary for the residents of the facility are ordered from and shipped by RX Solutions in Hattiesburg, Mississippi.

7.    Plaintiff Hazel DuMars became a resident of the Citronelle facility on November 5, 2004, via a transfer from the Mobile Infirmary hospital in Mobile, Alabama. Ms. DuMars was temporarily transferred back to the Mobile Infirmary on November 14, 2004, for treatment of a medical condition, but returned to the Citronelle facility on December 3, 2004. She transferred back to Mobile Infirmary on December 28, 2004, because her vital signs were dropping, and was never readmitted to the Citronelle facility.

8.    At the time of her admission, Ms. DuMars, through her nephew and authorized representative Ronald Everts, signed an admission agreement,[3] a copy of which is

_____

[3]    The admission agreement signed by Ronald Everts, on behalf of his aunt, contains the following arbitration provision: "To the extent that the Grievance Policy and Procedures referred to in Section (E) above fail to provide a resolution, the parties to this Agreement agree that any controversy or dispute between the parties (except for those claims expressly excluded) arising out of or relating to the Agreement, or concerning any rights arising hereunder or the breach thereof, including but not limited to, any alleged tort, personal injury, negligence or other claim; or any federal or state statutory or regulatory claim of any kind; or whether or not there has been a violation of any right or rights granted

attached as Exhibit A to this affidavit. This admission agreement specifically references and incorporates by reference a separate arbitration agreement, which was also signed on Ms. DuMars' behalf by Ron Everts. A copy of this arbitration agreement is attached hereto as Exhibit B. These records were signed voluntarily by Mr. Everts on behalf of Ms. DuMars and a representative of Delta Health Group.

9.      Ms. DuMars could not have been admitted to the facility without executing these agreements. The practice of having a representative and next of kin like Mr. Everts sign the

---

under Alabama or Mississippi law, as applicable, shall be resolved by binding <u>ARBITRATION</u>. The scope and all of the terms and conditions of <u>ARBITRATION</u> are more fully set forth in the separate Arbitration Agreement and are incorporated herein by reference." (Doc. 6, Saxon aff., Exhibit A, at ¶ F.1.) The separate arbitration agreement signed by Ronald Everts, on behalf of Hazel DuMars, reads, in relevant part, as follows:

To the extent that the Grievance Policy and Procedures referred to in the Admission Agreement fail to provide resolution, the parties to this agreement agree that any controversy or claim between them now existing or hereinafter arising out of or relating to the interpretation, performance or breach of any provision of this agreement or any other agreement whatsoever of the parties, oral or written; or any claims or causes of action of any type or nature, whether in tort, contract, or any other state and federal law(s), arising out of or relating to the rendering of or failure to render any health care or any other services by Delta Health Group, Inc., or any of its agents, employees or servants; or any other claims that arise out of or relate to actions, omissions, errors, practices, incidences or occurrences causing injury or damages (either physical, mental and/or economic or any other type of injury or damages) to either party whereby the other party or its agents, employees or servants may be held liable, shall be settled exclusively by binding arbitration administered by the American Arbitration Association under its most recent version of its Commercial Dispute Resolution Procedures, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. However, the parties agree that any claims by either party with a value of less than $15,000 [] are not subject to this arbitration agreement and may be brought in any court having jurisdiction.

(Doc. 6, Saxon aff., Exhibit B)

agreement and arbitration clause on behalf of an elderly resident is common in nursing home admissions, especially where the resident like Ms. DuMars is suffering from a difficult medical condition upon admission.

(*Id.*)

3.      Plaintiff's counsel filed a Suggestion of Death on February 25, 2005, notifying the Court that Ms. DuMars died on January 9, 2005. (Doc. 10) It is because of Ms. DuMars' death and the fact that Everts had not been named the decedent's personal representative that plaintiff's counsel argued in his initial response to the motion to compel arbitration, filed on April 4, 2005,  that same was unenforceable. (*See* Doc. 15, at 2 ("**THE MOTION TO COMPEL ARBITRATION IS UNENFORCEABLE BECAUSE NEITHER THE DECEASED, HAZEL G. DUMARS, NOR HER NEXT FRIEND RONALD M. EVERTS, PRESENTLY EXISTS OR HAS THE LEGAL AUTHORITY TO REPRESENT THE DECEDENT.**")) Thereafter, because of Ms. DuMars' death, the parties filed a joint motion for continuance of the motion to compel arbitration and stay of proceedings. (Doc. 16 ("[B]ecause of the death of the Plaintiff after the initial filing of her complaint, it will be necessary under Alabama law to have a personal representative appointed in order for the Plaintiff to continue with the lawsuit.")) The joint motion to continue and stay proceedings was granted and this action was stayed pending the appointment of

a personal representative by the Probate Court of Mobile County, Alabama. (Doc. 17)

4.      A motion to amend the complaint was filed on June 15, 2005 (Doc. 19) and granted on August 24, 2005 (Doc. 25). The amended complaint establishes Ronald Everts as the Personal Representative of the Estate of Hazel DuMars (Doc. 26, Exhibit A, LETTERS OF ADMINISTRATION ("Letters of Administration on the Estate of Hazel G. Dumars, deceased, are hereby granted to Ronald M. Everts, who is duly qualified and given bond as such Personal Representative and is authorized to administer such estate with authority to take actions as set forth in Sec. 43-2-843, *Code of Alabama 1975*, except as restricted below.")) and asserts three causes of action against defendant Delta Health; the first cause of action seeks damages for negligent care provided to Ms. DuMars, the second seeks damages for Ms. DuMars' wrongful death, and the third seeks a declaratory judgment by the Court interpreting the arbitration agreement in conjunction with the provisions of § 6-5-410(a) of the Alabama Code (*see* Doc. 26, FIRST AMENDED COMPLAINT, at 2-9).

5.      Plaintiff Everts, as the personal representative of the estate of DuMars, deceased, filed a supplemental response to the motion to compel arbitration on July 6, 2005. (Doc. 21) The defendant filed its reply to plaintiff's response on August 19, 2005 (Doc. 23) and on August 23, 2005 the Court

7

entertained oral arguments from the parties in reference to the motion to compel arbitration.

## CONCLUSIONS OF LAW

1.      "[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." *Allied-Bruce Terminix Cos., Inc. v. Dobson, Inc.*, 513 U.S. 265, 270, 115 S.Ct. 834, 838, 130 L.Ed.2d 753 (1995) (citation omitted); *see also Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 874 (11th Cir. 2005) ("The purpose of the FAA 'was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.' . . . The FAA's provisions 'manifest a "liberal federal policy favoring arbitration agreements."'"). In recognition of this purpose, the Supreme Court has concluded that the Act preempts state law and state courts "cannot apply state statutes that invalidate arbitration agreements." *Allied-Bruce Terminix Cos., supra*, 513 U.S. at 272, 115 S.Ct. at 838, citing *Southland Corp. v. Keating*, 465 U.S. 1, 15-16, 104 S.Ct. 852, 860-861, 79 L.Ed.2d 1 (1984); *see also Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) ("In recognition of Congress' principal purpose of

ensuring that private arbitration agreements are enforced according to their terms, we have held that the FAA pre-empts state laws which 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'").

2.     The Federal Arbitration Act (hereinafter, "FAA") specifically provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce[4] to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (footnote added). In *Allied-Bruce Terminix Cos., supra*, the Supreme Court explained what States can and cannot do under § 2 of the FAA in order to protect their citizens from unfair pressure to agree to a contract that contains an undesired arbitration provision. 513 U.S. at 281, 115 S.Ct. at 843.

States may regulate contracts, including arbitration clauses, under

---

[4]     The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S.Ct. 2037, 2040, 156 L.Ed.2d 46 (2003) (citation omitted).

general contract law principles[5] and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of *any* contract." What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the Act's language and Congress' intent.

*Id*. (internal citations omitted; footnote added; emphasis in original). Thus, "'[t]he FAA allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts  generally and not arbitration agreements specifically.'" *Jenkins, supra*, 400 F.3d at 875, quoting *Bess v. Check Express*, 294 F.3d 1298, 1306 (11th Cir. 2002) (other citation omitted).

3.    The Supreme Court has indicated that there are certain limited circumstances where "courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter[,]" and those circumstances "include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Financial Corp.*

---

[5]    "[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Information Services, Inc., supra*, 489 U.S. at 475-476, 109 S.Ct. at 1254 (internal citation omitted).

*v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 2407, 156 L.Ed.2d 414 (2003) (citations omitted).

   4. With these basic principles in mind, the Court considers the specific arguments made by plaintiff in opposition to the motion to compel arbitration. The Court focuses its attention on plaintiff's arguments inasmuch as plaintiff concedes that arbitration would be proper with respect to the negligent care claim set forth in Count I of the amended complaint and argues only that the wrongful death claim is not a proper subject for arbitration. (*See* Doc. 21, at 10-11) Accordingly, this Court agrees with the defendant that certain facts are undisputed in this matter and, as such, resolve almost every issue that could be raised in a court action attempting to negate the applicability of the FAA and the enforceability of an arbitration clause. (Doc. 23, at 1-2) The undisputed facts are: (1) Everts signed the arbitration agreement on behalf of the decedent, Ms. DuMars; (2) Everts was authorized to sign the arbitration agreement on the decedent's behalf; (3) the arbitration agreement was not obtained by fraud or duress and the terms of same were not unconscionable; (4) the contract at issue sufficiently involves interstate commerce such that the FAA applies to it; and (5) the claims in this case are based solely on duties arising out of the contract.

   5. Plaintiff starts with the general proposition under Alabama

contract law that "contracts made in violation of regulatory statutes enacted for the protection of the public have been rendered null and unenforceable." *Derico v. Duncan*, 410 So.2d 27, 29 (Ala. 1982) (citations omitted); *see also Wallace v. Marr*, 561 So.2d 1104, 1106 (Ala. 1990) ("""[W]henever regulation and protection are the goal of a statute, contracts made in derogation of that statute are null, void, and unenforceable."""). Plaintiff then offers to the Court that one of the gateway matters parties intend for courts to decide is "whether the venue for a statutorily-created, state remedy for wrongful death may be contractually shifted to an arbitration [] nothwithstanding the statute's specific language requiring the remedy be determined by a 'jury' 'in a court of competent jurisdiction within the state of Alabama, and not elsewhere'." (Doc. 21, at 5, quoting Ala.Code § 6-5-410 (1975)) Finally, plaintiff, in conclusion and in direct opposition to the defendant's motion to compel arbitration, contends that § 6-5-410 of the Alabama Code provides an exclusive remedy for the wrongful death claim raised in Count II of the amended complaint through a recovery by a "jury in a court of competent jurisdiction within the State of Alabama, and not elsewhere," thereby eliminating any remedy by arbitration.   The Court **REJECTS** plaintiff's arguments regarding the wrongful death claim and **GRANTS** the defendant's motion to compel arbitration of all claims.

6.    Alabama law is clear that "[a] wrongful death action is purely

statutory[]" and that "no such action existed at common law." *Waters v. Hipp*, 600 So.2d 981, 982 (Ala. 1992) (citation omitted). Alabama's wrongful death statute is found at § 6-5-410 of the Alabama Code and reads, in relevant part, as follows:

> A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama, and not elsewhere, for the wrongful act, omission, or negligence of any person, persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, provided the testator or intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death.

Ala.Code § 6-5-410(a). "The purpose of Alabama's wrongful death statute is to protect human life and prevent homicides by the wrongful act, omission, or negligence of persons or corporations." *Pace v. Armstrong World Industries, Inc.,* 578 So.2d 281, 283 (Ala. 1991) (citations omitted).

7.      The Alabama Supreme Court has recognized that "the limitations period found in § 6-5-410(d)[6] is a *statute of creation,* and not subject to tolling provisions because it is 'of the essence of the cause of action.'"*Cofer v. Ensor*, 473 So.2d 984, 991 (Ala. 1985) (footnote added); *see also id.* at 987 ("[W]here a prescriptive period is contained within the statutory grant of a cause of action,

_____

[6]      "Such action must be commenced within two years from and after the death of the testator or intestate." *Id*.

it is a statute of creation, and the period is deemed a portion of the substantive right itself, not subject to tolling provisions."); *see Ex parte Rowan*, 774 So.2d 530, 532 (Ala. 2000) ("A limitation on a right of action, set forth in a statute of creation (typically, a limitation on the time in which the right may be exercised), is '"so inextricably bound up in the statute creating the right that it is deemed a portion of the substantive right itself."'").

> "It sometimes happens that a statute will create an entirely new right of action that did not exist at common law, and will expressly attach thereto, without any exception, the proviso that the action must be brought within a certain time from the date of its accrual. *Conditions which are annexed to a right of action created by a statute in this manner must be distinguished from a limitation period under a true statute of limitations.*
>
> "The time element is an inherent element of the right so created, and such a provision will control, no matter in what form the action is brought."

*Cofer, supra*, 473 So.2d at 992 (emphasis in original; citation omitted). In addition to the limitations proviso, the Alabama Supreme Court has determined that § 6-5-410 contains the additional proviso[7] that "in order for a personal

---

[7]      "The general effect of provisos is to restrict the operative effect of statutory language." *Pace, supra,* 578 So.2d at 284 (citation omitted).

Absent the proviso, the language of § 6-5-410 provides that a personal representative may commence an action in a court of competent jurisdiction within the State of Alabama, and not elsewhere, against a person or corporation for the wrongful act or omission that caused the death of the decedent. The rule on interpretation of provisos provides that where the restrictive scope of the proviso is in doubt the proviso should

representative to be able to bring an action for wrongful death, the decedent must have been able to '[commence] an action for such wrongful act, omission or negligence if it had not caused death.'" *Pace, supra*, 578 So.2d at 283-284.

8.      It is plaintiff's position that § 6-5-410 contains yet a third proviso which Alabama courts have yet to recognize and that is that the site of the commencement of a wrongful death action must be "a court of competent jurisdiction" in which a "jury" will set the amount of damages and that such language cannot be reasonably interpreted to include an arbitration venue. This Court disagrees with plaintiff, however, that this portion of the statute is a proviso such that it should be deemed a portion of the substantive right itself. Several reasons lead the Court to this determination.

9.      In drafting, a proviso is "a provision that begins with the words *provided that* and supplies a condition, exception, or addition." BLACK'S LAW DICTIONARY 1262 (8th ed. 2004) (emphasis in original); *see also* WEBSTER'S II NEW RIVERSIDE UNIVERSITY  DICTIONARY 948 (1994) ("A clause containing a qualification, condition, or restriction in a document.");

_____

be strictly construed, and that only those subjects expressly restricted should be freed from the operation of the statute. The proviso requires that the decedent must have been able to commence a personal injury action had the wrongful act or omission not caused death.

*Id*. (internal citation omitted).

15

*id.* (proviso comes from the Latin *proviso quod*, meaning "provided that") (emphasis in original). The language of § 6-5-410 which plaintiff points to certainly does not begin with the words "*provided that,*" nor does it serve to restrain or modify the language preceding it,[8] and, therefore, this Court concludes that such clause is not a proviso under Alabama law. *See Griggs v. Bennett*, 710 So.2d 411, 413 n.7 (Ala. 1998) ("'Provisos serve the purpose of restricting the operative effect of statutory language to less than what its scope of operation would be otherwise.'");[9] *Clark v. Container Corp. of America, Inc.*, 589 So.2d 184, 190 n.4 (Ala. 1991) ("The appropriate office of a proviso is to restrain or modify the enacting clause. . . . [A] proviso does not enlarge the enacting clause or confer a power or right.");[10] *Bowlin Horn v. Citizens Hosp.*, 425 So.2d 1065, 1070 (Ala. 1982) ("The appropriate office of a proviso is to

---

[8]     The language "in a court of competent jurisdiction within the State of Alabama, and not elsewhere," is part and parcel of the enacting language of the statute and certainly cannot be regarded as a condition, exception, addition, restriction or modification thereto so much as it is simply recognition of the fact that a wrongful death action is decidedly an Alabama statutory grant of a cause of action. *See Cofer, supra*, 473 So.2d at 987.

[9]     This Court simply cannot perceive how the language plaintiff points to has as its purpose the restricting of the operative effect of the statutory language to less than its scope of operations would be otherwise. Certainly, it is not as if a personal representative could bring a wrongful-death claim under § 6-5-410 of the Alabama Code in any court in another state in this country.

[10]    Based upon the fact that a proviso cannot confer a right, this Court correctly views the language of the statute plaintiff cites to as simply the enacting language granting a statutory cause of action as opposed to a proviso.

16

restrain or modify the enacting clause, or preceding matter, and should be so confined, unless it is apparent it should apply to some other matter."); *Mitchell v. Mitchell*, 258 Ala. 572, 574, 64 So.2d 104, 106 (Ala. 1953) ("To that part which precedes the word 'provided' where that word first appears, we will refer to as the first clause; to that part between the words 'provided' we will refer to as the first proviso; and to that part which follows the word 'provided' where it last appears we may refer to as the second proviso."). This conclusion is particularly compelling in this instance since the Alabama Supreme Court has recently compelled arbitration of wrongful-death claims against a nursing home based upon the (later-named) executor's and (later-named) administratrix's execution of the nursing home's admission contracts, each of which contained an arbitration provision. *Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So.2d 661, 668 (Ala. 2004) ("Because the facts of *Community Care* are similar to the facts in the present case, and because this Court in *Community Care* decided that the activities affected interstate commerce, we conclude that Briarcliff's activities substantially affect interstate commerce. [] Because Turcotte and Woodman are bound by the admission contracts, we find that the trial court erred in denying Briarcliff's motions to compel arbitration. We also conclude that the arbitration provision is not unconscionable and that the contract containing the arbitration provision is not one of adhesion, and that Briarcliff's

17

activities substantially affect interstate commerce. Therefore, we reverse the trial court's orders denying Briarcliff's motions to compel arbitration and remand the case for further proceedings consistent with this opinion."). While this Court appreciates plaintiff's position that the Alabama Supreme Court in *Briarcliff* did not consider the argument being raised herein, that case can certainly be read as implicitly rejecting such argument based upon the reasoning previously set forth by the undersigned as well as Judge Johnstone's failure, in dissent, to seize upon this language as a proviso preventing arbitration of wrongful death claims, *see* 894 So.2d at 670 ("'A wrongful death action is purely statutory; no such action existed at common law.' 'Section 6-5-410 . . . authorizes a personal representative to commence a wrongful death action.' 'A "personal representative," for the purposes of § 6-5-410, is an executor or an administrator.'").[11]

    10.    In addition, plaintiff's argument in this regard need be rejected for another reason. Rule 38(a) of the Alabama Rules of Civil Procedure provides that "[t]he right of trial by jury as declared by the Constitution of Alabama **or as**

---

[11]    Against such backdrop, Judge Johnstone had the perfect opportunity to argue that the statute eschews arbitration of wrongful death claims in Alabama in favor of a jury determination in a court of competent jurisdiction. This Court takes from Judge Johnstone's failure to follow this line of reasoning that he recognizes, as surely as this Court does, that the language plaintiff relies on is not a proviso and, therefore, does not limit the venue of wrongful death claims to courts of competent jurisdiction in Alabama as opposed to arbitration venues.

**given by a statute of this State** shall be preserved to the parties inviolate."
(emphasis supplied); *see also Loyal American Life Ins. Co., Inc. v. Mattiace*,
679 So.2d 229, 238 (Ala. 1996) ("Section 11 of the Alabama Constitution of
1901 states: '[T]he right of trial by jury shall remain inviolate.'"), *cert. denied*,
519 U.S. 949, 117 S.Ct. 361, 136 L.Ed.2d 252 (1996). Despite this clear and
strong language, a party must nonetheless demand a trial by jury, Ala.R.Civ.P.
38(b) ("Any party may demand a trial by jury of any issue triable of right by a
jury by serving upon the other parties a demand therefor in writing at any time
after the commencement of the action and not later than thirty (30) days after
the service of the last pleading directed to such issue. Such demand may be
indorsed upon a pleading of the party, and such demand shall be deemed to be a
demand for a struck jury."), because the failure to make such demand waives that
party's right to a jury trial, Ala.R.Civ.P. 38(d) ("The failure of a party to serve
a demand as required by this rule and to file it as required by Rule 5(d)
constitutes a waiver by the party of trial by jury."). The Alabama Supreme Court
has applied Rule 38(d) to wrongful death actions. *Ex parte Blackmon*, 553
So.2d 549, 549-550 & 550 (Ala. 1989) ("This petition for writ of mandamus
arises from the denial of a request for a jury trial. A complaint was filed on
October 10, 1988, by Hope E. Bennett and Howard H. Bennett, as co-
administrators of the estate of Michael Howard Bennett, deceased, against Perry

19

Joe Blackmon, alleging the wrongful death of Michael H. Bennet. The plaintiffs did not request a jury trial. The defendant, Perry Joe Blackmon, did not demand a jury when he filed his initial pleading (styled an 'answer') on November 10, 1988. His request for a jury trial was filed June 4, 1989, after a second pleading (also styled an 'answer') was filed with the trial court on May 30, 1989. He now petitions this Court for a writ of mandamus, contending that the trial court abused its discretion in denying his request for a jury trial. . . . On the authority of Rule 38, A.R.Civ.P.; *Dorcal, Inc. v. Xerox Corp.*, 398 So.2d 665 (Ala. 1981); and *Ex parte Reynolds*, 447 So.2d 701 (Ala. 1984), we hold that the request for a trial by jury, filed over six months after the defendant's initial 'answer,' was not timely made."). Rule 38, therefore, treats a wrongful-death action, admittedly a statutory right of action providing for trial by jury, just like every non-statutory or common law cause of action, such as for personal injury caused by negligence wherein a right to trial by jury has been recognized as a constitutional right, *Loyal American Life Ins. Co., supra*, 679 So.2d at 238-239 & 239 ("The Court has held: 'It is well settled in Alabama that § 11 governs (1) those causes of action arising under the common law, and (2) those causes of action afforded by pre-1901 statutes.' . . . [I]t is clear that the right to a jury trial protected by § 11 applies to *all* common law causes of action, including the tort of bad faith."), such that the right of trial by jury is waived unless specifically

20

demanded by one of the parties.[12] Because the right to a trial by jury is no less

inviolate for those who assert the right in a personal injury action as it is when

asserted by the personal representative of the deceased in a statutory wrongful

death action,[13] it is inherently appropriate for this Court to compel arbitration

of the wrongful death claim along with the personal injury claim which plaintiff

concedes is due to be arbitrated.[14]

_____

[12]       In fact, in this case, plaintiff, in the amended complaint demands a trial by jury both with respect to the personal injury claim (Doc. 19, First Amended Complaint, at 7-8 ("WHEREFORE, the Plaintiff, Ronald M. Everts, as the Personal Representative of the Estate of Hazel G. DuMars, deceased, demands judgment against Defendant, Delta Health, Inc., for appropriate compensatory and/or punitive damages, in such amount as the jury may deem appropriate, plus costs of Court.")) and the wrongful death claim (*id*. at 8 ("WHEREFORE, the Plaintiff, Ronald M. Everts, as the Personal Representative of the Estate of Hazel G. DuMars, deceased, demands judgment against Defendant, Delta Health, Inc., for appropriate damages, in such amount as the jury may deem appropriate, plus costs of Court.")).

[13]       It is clear to this Court that the reason the jury trial language is contained in the wrongful death statute is not because the right to a jury trial in a wrongful death case is more sacrosanct than the right to common law action for personal injury but simply because it is a statutory cause of action, rather than a common law action, that is, an action for which § 11 of the Alabama Constitution provides for the right to trial by jury, *Loyal American Life Ins. Co., supra*, 697 So.2d at 239.

[14]       *See Georgia Power Co. v. Partin*, 727 So.2d 2, 5-6 (Ala. 1998) ("In order for a dispute to be characterized as arising out of the subject matter of a contract, for the purposes of arbitration, it must at the very least raise some issue that cannot be resolved without a reference to, or a construction of, the contract itself. It is clear that Jerry Partin's complaint alleging negligence, although initially expressed in ignorance of the contractual relationship, was later amended to assert a claim alleging the breach of certain duties that he alleges were owed to him by Georgia Power, and it is clear that these duties are alleged to have arisen from Georgia Power's operations contract with Orba Corporation. Because both the contract claims and the tort claims, after the amendment of the complaint, involve questions of fact as to Georgia Power's duties to Jerry Partin arising from the operations agreement, we agree that both kinds of claims are included within the scope of the arbitration agreement in that contract.").

11.    Finally, if this Court was to interpret the first clause of § 6-5-410 of the Alabama Code as desired by plaintiff and find an arbitration venue untenable, it would be an effective finding that Alabama's wrongful death statute requires a judicial forum for the resolution of a claim which the parties have agreed to resolve by arbitration. This would, of course, be reversible error since the FAA preempts such state laws. *Volt Information Sciences, Inc*., 489 U.S. 478, 109 S.Ct. 1255.

12.    In light of the foregoing, the Court finds that § 6-5-410 of the Alabama Code does not provide that the exclusive remedy for wrongful death claims is a jury trial in a court of competent jurisdiction in Alabama. Rather, it is clear to this Court that binding arbitration, contractually agreed to by the parties, is as viable a means to handle wrongful death claims in Alabama, as it is for the disposition of personal injury claims.

## CONCLUSION

The Court **GRANTS** the defendant's motion to compel arbitration (Doc. 5) and **ORDERS** that the parties proceed to arbitration with respect to the negligent care and wrongful death claims set forth in the first amended complaint in accordance with the terms of the arbitration agreement. Having granted Delta Health's motion, this Court retains jurisdiction to confirm or vacate the resulting arbitration award under 9 U.S.C. §§ 9-10. *TranSouth*

22

*Financial Corp. v. Bell*, 149 F.3d 1292, 1297 (11th Cir. 1998). Accordingly, the Court will not dismiss plaintiff's claims against Delta Health, but instead **STAYS** such claims pending the outcome of arbitration. Beginning in October of 2005, Delta Health is **ORDERED** to file and serve, on or before the **third Tuesday of each month**, a written status report reflecting the status of the arbitration proceedings.

      **DONE** and **ORDERED** this the 28th day of September, 2005.

                    s/WILLIAM E. CASSADY
                    **UNITED STATES MAGISTRATE JUDGE**